UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANDRA LEE LANE,

                Plaintiff,

    v.

WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.*,

                Defendant.

Case No. C20-5546-RJB-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Sandra Lee Lane ("Plaintiff"), proceeding *pro se*, filed an amended complaint alleging her treating providers at Washington Corrections Center for Women ("WCCW"), Mary Colter, M.D., and Lisa Anderson, M.D., ("Defendants"), intentionally denied her needed medical care. (Am. Compl. (dkt. # 24).) Defendants filed a motion for summary judgment ("Defendants' Motion"), principally arguing there was no evidence they were deliberately indifferent to Plaintiff's medical needs. (Def.'s Mot. (dkt. # 34).) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Defendants' Motion be GRANTED.

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

### A. Procedural History

Plaintiff filed her amended complaint on November 20, 2020. (Am. Compl.) On May 7 and June 4, 2021, Plaintiff filed "Exhibits" to her complaint. (Pl. Exhibit 1 and 2 (dkt. ## 32, 33).) On July 28, 2021, Defendants filed their summary judgment motion. (Def.'s Mot.) The motion was supported by declarations from Dr. Colter and Dr. Anderson, who both stated they reviewed Plaintiff's medical records in preparing their declarations. (Colter Decl. (dkt. # 35) at 2, Anderson Decl. (dkt. # 36) at 1-2.) On August 8, 2021, Plaintiff filed a response styled as a "Declaration" accompanied by medical and other records. (Pl.'s Resp. (dkt. # 38), Pl.'s Resp. Exhibit (dkt. # 38-1).) In their reply, filed August 27, 2021, Defendants "request that the court not consider as evidence the arguments and assertions of fact contained in Lane's declaration that Lane is not competent to testify to, but do not oppose the court considering the documents attached to Lane's purported declaration, or those statements of fact . . . that are based on her personal knowledge[.]" (Def.'s Reply (dkt. # 39) at 2.)

### B. Plaintiff's Allegations

Plaintiff alleges she "was left with a urinary trac[t] infection [for] 4 months" and received "no help" from Dr. Anderson. (Am. Compl. at 5.) She also alleges she was told she was anemic and had blood in her stool, but Dr. Anderson only recommended iron pills and "did no other test to find out why[.]" (*Id*.)

Plaintiff alleges that she received Social Security disability benefits prior to entering WCCW based on torn ligaments in her neck and rheumatoid arthritis, yet Dr. Anderson told her she did not have these conditions. (Am. Compl. at 27.) She alleges Dr. Anderson continually told her she did not have torn ligaments in her neck and gave her "NO treatment what-so-ever

nothing for pain NO p[hysica]l therapy nothing not a Tylenol or ice pack nothing for a whole year[.]" (*Id.* at 22.)

Plaintiff alleges Dr. Colter "denied [her] medical care" when she had "pneumonia with sepsis" and almost died in July 2020. (Am. Compl. at 7.) Plaintiff alleges she "was also bleeding intern[a]lly, for about 8 months." (*Id.* at 22.)

### III.   DISCUSSION

#### A.   Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must

REPORT AND RECOMMENDATION - 3

present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Section 1983 Claims

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) she suffered a violation of her rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff's claims of inadequate medical care implicate her rights under the Eighth Amendment. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)). To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to her "serious medical needs." *Id*.

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v.*

*Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.").

    **C.**    **Plaintiff's Allegations**

                1.    *Urinary Symptoms*

Regarding Plaintiff's claim of a long-term untreated urinary tract infection ("UTI"), Defendants provide evidence that Plaintiff complained of urinary symptoms only twice, on October 1, 2019, and in January 2021, and both times she was treated with "standard antibiotics." (Colter Decl. at 3.) After the first treatment, Plaintiff "denied urinary symptoms" on October 18, 2019. (Anderson Decl. at 4.) While Plaintiff complained of continuing symptoms after the second treatment, "four repeat urinalyses done between February 6, 202[1] and March 9, 202[1],[1] showed no evidence of a UTI." (Colter Decl. at 3.) In her response to the summary judgment motion, Plaintiff does not mention urinary symptoms.

---

[1] Dr. Colter's declaration states these dates were in 2020, which appears to be a typographical error. (*See* Colter Decl. at 3.)

REPORT AND RECOMMENDATION - 5

Plaintiff fails to present any evidence Defendants were deliberately indifferent to her urinary symptoms. She received treatment, as well as further tests indicating any remaining symptoms were not due to a UTI. No evidence indicates "the course of treatment the doctors chose was medically unacceptable under the circumstances" and thus the Court recommends that Defendants' motion for summary judgment be granted on this issue. *Hamby*, 821 F.3d at 1092.

### 2. Rheumatoid Arthritis

Plaintiff alleges Dr. Anderson told her she did not have rheumatoid arthritis. (Am. Compl. at 27.) However, records Plaintiff provides indicate that she did not, in fact, have rheumatoid arthritis. Plaintiff provided an April 14, 2021, note from her new doctor, Catherine Smith, D.O., stating her "testing for rheumatoid arthritis was negative. There are two different tests that can indicate a diagnosis of rheumatoid arthritis, and both were negative." (Pl. Exhibit (dkt. # 33) at 13.)[2] Moreover, regardless of the correct diagnosis, Plaintiff fails to allege rheumatoid arthritis caused any serious medical need to which Dr. Anderson was deliberately indifferent. The Court recommends that Defendants' motion for summary judgment be granted on this issue.

### 3. Neck Pain

Plaintiff alleges Dr. Anderson told her she did not have torn neck ligaments, but offers no evidence that this diagnosis was inaccurate. (Am. Compl. at 27.) Plaintiff alleges she received Social Security disability benefits "for neck injuries," rheumatoid arthritis, and emphysema. (*Id.* at 4.) Plaintiff provides records indicating she "m[e]t the medical requirements to receive" Social

---

[2] A week later, Dr. Smith reviewed records that had been sent in and wrote to Plaintiff that she found "some indications that you had a diagnosis of rheumatoid arthritis before. Thank you for bringing this to my attention. I have added on some labs to your upcoming lab draw so that we can better characterize your arthritis." (Pl. Exhibit (dkt. # 33) at 14.) This note indicates Plaintiff has some type of arthritis, but not rheumatoid.

Security disability benefits, but no evidence of what impairments or conditions qualified her for benefits. (Pl.'s Resp. Exhibit at 1.)

Plaintiff alleges she "was left in chronic pain from [her] neck for a year." (Am. Compl. at 4.) Defendants provide evidence that, at Dr. Anderson's first meeting with Plaintiff, in July 2019, they discussed several health issues but Plaintiff "did not report neck pain[.]" (Anderson Decl. at 2-3.) On October 1, 2019, Plaintiff "reported . . . longstanding neck pain" to a nurse, but the nursing notes did not indicate Plaintiff was "in distress." (*Id.* at 3.) Dr. Anderson saw Plaintiff on October 18, 2019, and states Plaintiff "reported 'no ligaments in neck.'" (*Id.* at 4.) It is unclear whether this indicates Plaintiff believed she had no neck ligaments, or no problem with her neck ligaments. Regardless, according to the notes, they discussed several other health issues, and Plaintiff verbalized "no other priorities . . . at that time." (*Id.*) In treatment visits in January 2020, in March 2020, and on April 24, 2020, Plaintiff did not raise any concerns about her neck. (*Id.* at 4-5.)

On April 29, 2020, in discussing a thyroid nodule discovered by a 2013 imaging test "apparently done at that time for a disability assessment," Dr. Anderson and Plaintiff "discussed her neck pain history[.]" (Anderson Decl. at 6.) Dr. Anderson's treatment notes indicate Plaintiff stated "no one had helped her '[her] whole life,'" and abruptly left. (*Id.*) Dr. Anderson prescribed a topical pain reliever and ordered a cervical spine x-ray. (*Id.*) The May 2020 imaging showed "age-related changes" and "did not raise alarm for a related local nerve injury." (*Id.*) An orthopedic specialist who examined the x-ray images only "recommended following the patient closely" for signs of worsening. (*Id.* at 6-7.) On May 15, 2020, Dr. Anderson transferred

REPORT AND RECOMMENDATION - 7

1  Plaintiff's care to Dr. Smith, who "began to focus on neck pain" and continues to treat Plaintiff's

2  pain with medications and ice.[3] (Anderson Decl. at 7.)

3        Plaintiff has identified no evidence of deliberate indifference to a serious medical need

4  related to her neck. When Plaintiff raised the issue of neck pain, Dr. Anderson provided

5  treatment and further investigated Plaintiff's condition with x-rays and consultation with a

6  specialist. Plaintiff does not identify what other course of action Dr. Anderson could or should

7  have taken, and there is no evidence "the course of treatment the doctors chose was medically

8  unacceptable under the circumstances and that the defendants chose this course in conscious

9  disregard of an excessive risk to the plaintiff's health." *Hamby*, 821 F.3d at 1092. Because there

10  is no evidence of deliberate indifference to a serious medical need related to Plaintiff's neck, the

11  Court recommends that Defendants' motion for summary judgment be granted on this issue.

12            4.     *Anemia, Stomach/Internal Bleeding, and Pneumonia*

13        According to medical records Plaintiff provided, on July 21, 2020, Plaintiff entered the

14  WCCW clinic complaining of dizziness and later, after vomiting blood, was taken by ambulance

15  to St. Anthony Hospital. (Pl.'s Resp. Exhibit at 17-18, 20.) She was found to have severe anemia,

16  acute upper gastrointestinal bleeding, and hypotension. (*Id*.) Plaintiff was found to have a

17  "Mallory-Weiss tear," which caused "[a]cute blood loss anemia[.]" (*Id.* at 34.) While in the

18  hospital for about three days, Plaintiff "develop[ed] fevers and … [c]hest x-ray showed

19  pneumonia. [After antibiotic treatment,] sepsis resolved." (Pl. Exhibit 1 at 24.)

20        Defendants provide evidence that, one month before she was taken to the hospital,

21  Plaintiff's "blood count was checked for other reasons and was found to be just barely less than

22

23  [3] While Plaintiff alleged in her complaint that she was given no care at all, not even ice, in her response to the summary judgment motion Plaintiff acknowledges she was at least "given ice for [her] neck" on nine occasions. (Pl. Resp. at 2.)

REPORT AND RECOMMENDATION - 8

normal, indicating that she had not been having any significant bleeding prior to that time." (Colter Decl. at 3.) Plaintiff alleges she "was left bleeding intern[a]lly for about 8 months." (Am. Compl. at 5.) However, Plaintiff, as the nonmoving party, cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez*, 343 F.3d at 1112. No evidence supports Plaintiff's allegation. Based on blood tests in the seven months before July 2020, there was "no medical indication that [Plaintiff] had active internal bleeding during that time." (Colter Decl. at 3-4.)

Plaintiff alleges "Dr. Anderson kept wanting [her] to take iron pills telling [her she] had blood in [her] stool but did no other test to find out why [she] was anemic or where [she] was bleeding from intern[a]lly." (Am. Compl. at 5.) However, Defendants provide evidence that, due to "microscopic" gastrointestinal blood found in September 2019, Plaintiff had "a colonoscopy, which is the standard work-up for this." (Colter Decl. at 3.) "Further work-up was not recommended by the specialist." (*Id*.) While Plaintiff's experience of being hospitalized was a very unfortunate outcome, there is no evidence it was caused by deliberate indifference. No evidence indicates the course the doctors chose was "medically unacceptable" or there was "conscious disregard" of excessive risk to Plaintiff. *Hamby*, 821 F.3d at 1092.

In her response to the summary judgment motion, Plaintiff states that in June 2021 she was "found [to have] a stomach bleed which was burnt closed and now [she] feel[s] better than [she has] in a very long time." (Pl.'s Resp. at 5.) It is unclear if Plaintiff believes this relates to the bleeding she experienced in July 2020. In any case, Plaintiff's statement does not appear to show any deliberate indifference by Dr. Colter or Dr. Anderson. The Court recommends that Defendants' motion for summary judgment be granted on this issue.

**D.    Allegations against Washington Department of Corrections**

Plaintiff alleges the Department of Corrections violated its policy on identifying and accommodating prisoners with disabilities. However, the Department of Corrections was dismissed as a defendant as of December 28, 2020. (*See* Order adopting Report and Recommendation (dkt. # 27).) As this Court previously explained, "the Washington Department of Corrections, as an arm of the state, cannot be sued under § 1983." (Report and Recommendation (dkt. # 25) at 5.)

## IV.    CONCLUSION

In conclusion, viewing the evidence in Plaintiff's favor, the Court concludes Defendants are entitled to summary judgment based on a lack of evidence of deliberate indifference to a serious medical need. The Court recommends Defendants' Motion be GRANTED and this case be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on November 12, 2021.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Robert J. Bryan.

Dated this 19th day of October, 2021.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11